BERNIE (BURNNIE) EDWARD FIELDS v. STATE OF ARKANSAS

5-5419                                        441 S.W. 2d 803

Opinion Delivered June 9, 1969

*Claude Carpenter, Jr.* for appellant.

*Joe Purcell,* Atty. Gen. and *Don Langston,* Ass't. Atty. Gen. for appellee.

J. FRED JONES, JUSTICE. On November 26, 1968, the appellant, Bernie (Burnnie) Edward Fields, was tried and convicted in the Pulaski County Circuit Court for the crime of armed robbery, and on December 3, 1968, he was sentenced to prison for 21 years with seven years to be served before becoming eligible for parole. He has appealed to this court and relies upon the following point for reversal:

> "The trial court erred in failing to grant appellant motions to dismiss the charge here in issue under the provisions of Arkansas Statute 43-1708 which provides for charges to be dismissed if not brought to trial prior to the end of two terms of court following the filing of the indictment or information."

Arkansas Statutes Annotated § 43-1708 (Repl. 1964) is as follows:

> "If any person indicted for any offense, and committed to prison, shall not be brought to trial before the end of the second term of the court hav-

ing jurisdiction of the offense, which shall be held after the finding of such indictment, he shall be discharged so far as relates to the offense for which he was committed, unless the delay shall happen on the application of the prisoner."

The terms of the Pulaski County Circuit Court begin on the 4th Monday in September and the 1st Monday in March of each year and each term extends to the beginning of the next term. Ark. Stat. Ann. § 22-310 (Repl. 1962).

On February 12, 1967, appellant was arrested in Pulaski County on two charges of robbery and one charge of assault with intent to kill. He waived preliminary hearing on arraignment and before informations were filed by the prosecuting attorney in Pulaski County, he was surrendered by the sheriff of Pulaski County to the authorities in Lonoke County where on February 20, 1967, he was tried and convicted on felony charges pending against him in that county, and was sentenced to four years in the Arkansas Penitentiary. On February 28, 1967, the prosecuting attorney of Pulaski County filed informations charging the appellant with two counts of robbery and one count of assault with intent to kill committed in Pulaski County. A bench warrant was issued on these informations and mailed to the superintendent of the penitentiary where the appellant was incarcerated under his sentence from Lonoke County.

On March 30, 1967, the appellant wrote a letter to the trial judge as follows:

"Dear Sir,

The reason I'm writing this letter is too ask you when I'll be able too appear in your court.

I went too a preliminary hearing on are about Feb. 13, 1967, and at that time I waved perliminary hear-

ing and was bound over too your court. But was not notified of when my court date was. I would like very much too appear in your court with end the next (30) days if possible, so I can clear the Books."

On May 1, 1967, the appellant was brought before the Pulaski County Circuit Court, where attorney Harry Robinson was appointed to defend him. A plea of not guilty was entered to each charge and the cases were passed to October 6, 1967, for jury trial. On September 5, 1967, the cases were passed to October 2, 1967, to be reset. On October 2, 1967, the appellant was brought before the court and the cases were passed to March 27, 1968, for a jury trial, and on February 29 the appellant's attorney was advised by the prosecuting attorney that case No. 66886 (robbery) would be tried on March 27, 1968.

On March 15, 1968, the court ordered the appellant brought from the penitentiary for the purpose of trial on March 27. The record is vague as to what happened on March 27, 1968, but on April 1, 1968, the appellant was brought before the court, his previously appointed attorney Harry Robinson was relieved, and attorney Claude Carpenter was substituted. The case was passed to April 24, 1968, for a hearing on appellant's motion to dismiss, and the appellant was remanded to the Pulaski County jail pending the hearing.

On April 24, 1968, appellant's written motion to dismiss pursuant to Ark. Stat. Ann. § 43-1708, supra, was filed, heard and overruled by the court and the cases were passed to May 10, 1968, for jury trial. The docket entry on this date is as follows:

"This day comes the State of Arkansas by James R. Howard, Deputy Prosecuting Attorney, and comes the defendant in proper person in custody of the Sheriff and by his Attorneys, Harry

Robinson and Claude Carpenter, appointed by the Court, and defendant's Motion to Dismiss is hereby filed, heard and overruled and the cases are passed to May 10, 1968, for a jury trial.''

On June 10, 1968, an appeal from the order of April 24, overruling appellant's motion for dismissal, was prayed and granted. The appellant was given an additional 60 days for perfecting his appeal to this court and was given 45 days to prepare his bill of exceptions. The bill of exceptions was approved and certified by the trial judge on July 2, 1968, but was not filed in this court until March 14, 1969, when it was filed as a part of the record on this appeal.

On October 29, 1968, the appellant filed a petition in this court for a writ of prohibition to the trial court permanently prohibiting any further prosecution on the informations filed against the appellant and we denied this petition on November 18, 1968. On November 4, 1968, the appellant was brought before the trial court and his case was passed to November 18, 1968, for jury trial. On November 18, 1968, the case was reset for jury trial on November 26, 1968.

When this case finally came to trial on November 26, 1968, the appellant renewed his motion to dismiss. The motion was overruled and the trial resulted in the jury verdict and judgment thereon forming the basis for this appeal.

The appellant's motion for a new trial is entirely directed to the jury verdict and is as follows:

"The defendant respectfully moves the Court for an order granting him a new trial in this matter and for cause states:

1. The verdict is contrary to the law.

2. The verdict is contrary to the evidence.

1254

3. The verdict is contrary to the law and the evidence.

4. The defendant moves the Court for an order setting the jury's verdict aside and for either a new trial or a directed verdict notwithstanding.''

The evidence in this case was more than sufficient to sustain the verdict of the jury and the judgment rendered thereon.

Mrs. Mattie Nix identified the appellant as the person who came into her cafe and while drinking a cup of coffee made numerous inquiries about the liquor store across the street. She saw the appellant leave her cafe, walk across the street and enter the liquor store. She saw the appellant come out of the liquor store and walk down the street. Mrs. Nix testified that a short time after she saw the appellant come out of the liquor store, she saw the owner of the liquor store, Joe Bauer, come out of the back part of the liquor store ''bloody all over.''

Joe Bauer positively identified the appellant as the man who came into his liquor store and ordered a half pint of brandy. He says that when he turned to face the appellant after looking for the brandy, the appellant was pointing a pistol at him. He testified that the appellant forced him into a back room of the liquor store, robbed him of the money in his pocket, forced him to wait on a customer and then robbed the cash register. He testified that after the appellant robbed the cash register he again forced him to the rear of the liquor store and told him that he, the appellant, was going to have to put him to sleep, whereupon the appellant struck him twice on the head with the pistol and that when he fell to the floor, the appellant left the store.

The police officers found a broken piece from a pistol handle grip in Bauer's place of business following

the robbery and assault, and when appellant was arrested while hitchhiking out of Little Rock, a pistol with a broken handle grip was found on his person. The piece of pistol grip found in the liquor store matched the part missing from the pistol the appellant was carrying.

If the jury believed the state's witnesses, as they evidently did, there was substantial evidence to sustain the conviction.

The appellant's argument on this appeal, however, is primarily directed to his contention that the trial court committed reversible error in overruling his motion to dismiss. The appellant did not perfect his appeal from the judgment of April 24, 1968, as he had a right to do. (*Ware* v. *State*, 159 Ark. 540, 252 S.W. 934.) Instead of perfecting his appeal, the appellant filed a petition in this court for a writ of prohibition.

The appellant is correct in his statement that "Article 2, Section 10, of the Arkansas State Constitution provides for a speedy trial in criminal matters with Arkansas Statutes 43-1708 implementing this constitutional provision." But, neither Article 2, Section 10 of the constitution, nor Ark. Stat. Ann. § 43-1708 automatically entitles a prisoner to discharge at the end of the second term of the court having jurisdiction of the offense. There are statutory exceptions to such rule. Section 43-1708, supra, ends with the phrase "unless the delay shall happen on the application of the prisoner."

Ark. Stat. Ann. § 43-1709 (Repl. 1964) provides:

"If any person indicted for any offense, and held to bail, shall not be brought to trial before the end of the third term of the court in which such indictment is pending, which shall be held after the finding of such indictment, and such holding to bail on such indictment, he shall be discharged, so far as relates to such offense, unless the delay happened on his application."

And Ark. Stat. Ann. §43-1710 provides:

"Nothing in the two preceding sections shall be so construed, as to discharge any person who may have been indicted for any criminal offense, on account of the failure of the judge to hold any term of the court, or for the want of time to try such person at any term of the court."

The statutory exceptions are the reasons that alleged error in overruling a motion for discharge under the statute must be reached by appeal on the record rather than by prohibition as a matter of law.

After the appellant wrote his letter to the trial judge on March 30, 1967, he appeared in court on May 1, 1967, an attorney was appointed to represent him and he entered his plea of not guilty. There is no question that the appellant was represented by court appointed counsel at all stages of the procedure after May 1, 1967, and there is no evidence that he requested a speedy trial after he was represented by counsel, and there is no evidence that he, or his counsel, objected to the postponements of his trial. The state contends that the delays in trial happened on the application of the appellant and the appellant contends that he made no such application and did not authorize his attorneys to do so. The record before us is fairly complete as to the events that did occur, but the record is woefully inadequate as to why they occurred. At the hearing on motion to dismiss, the record, in part, is as follows:

"THE COURT:

On 9-5-67 it was passed to October 2nd to be reset.

MR. ROBINSON:

Wasn't it set for a jury trial on 9 something?

THE COURT:

On 5-1-67 it was set for a jury trial.

MR. ROBINSON:

But the record doesn't show who passed it, or why.

THE COURT:

You know who passed it. I know, too. You did.

MR. ROBINSON:

You did it because you wanted to set something else on that day.

THE COURT:

Maybe I did."

Mr. Robinson, the appellant's court appointed counsel, testified on cross-examination as follows:

"Q. Is it your recollection that you weren't in court at any time these cases were passed, that the docket reflects?

A. Jim, I wouldn't say.

Q. Do you recall the case ever being passed while you were not in court at any of these dates that are on this docket?

A. It is my recollection, the best I can remember, that the case was passed in October while it—I mean passed in September when it had been set for jury trial in October, and it was passed for some reason convenient to the State—The State or Court, I won't testify which. I wouldn't swear to which one by my recollection.

Q. Your testimony is that these dates here where it says the case was passed were not done at your request?

A. Absolutely not.

Q. Did you raise any objections to these passages at any time?

A. I did not. I had no opportunity, according to my recollection of it."

The appellant in this case was serving a penitentiary sentence from another county on conviction for a separate and different offense when the informations were filed against him in Pulaski County. The record before us indicates that the appellant was represented by an attorney each time his case was continued. Although appellant's attorney says that he did not request a continuance, he admits that he raised no objection to a continuance and states: "I had no opportunity, according to my recollection of it."

After attorney Robinson was relieved as appellant's attorney on April 1, 1966, and Mr. Carptenter was substituted, both attorneys continued to represent the appellant by mutual agreement. After an appeal was granted on June 10, 1968, from the judgment overruling appellant's motion to dismiss, instead of perfecting the appeal to this court the appellant filed his petition for a writ of prohibition which was denied. The appellant then renewed his motion for dismissal at the trial of the case and now contends, after trial and conviction, that he is entitled to be discharged from the penalty of his conviction because he was not tried within two terms of the court as provided by statute and was not given a speedy trial as required by the constitution.

The verdict of the jury is sustained by substantial evidence and from the state of the record before us, we are unable to say, as a matter of law, that the trial court erred in refusing to discharge the appellant on motion when no appeal was perfected from such refusal and the

alleged error is not brought forward in appellant's motion for a new trial.

In *Randall v. State,* 239 Ark. 312, 389 S.W. 2d 229, we said:

> "To duly preserve a point for presentation to this court in a felony case, like the one here, there must be: (1) an objection; (2) an exception; and (3) the point must be carried forward in the motion for new trial."

In the earlier case of *Yarbrough v. State,* 206 Ark. 549, 176 S.W. 2d 702, this court had occasion to explain the necessary procedure in preserving a point on appeal, and we did so in these words:

> "On appeal from the circuit court, this court only reviews errors appearing in the record. The complaining party must first make an objection in the trial court, and this calls for a ruling on his objections. An exception must be taken to an adverse ruling on the objection, which 'directs attention to and fastens the objection for a review on appeal.' The matter complained of, together with the objections and the exceptions to the ruling of the court, must be brought into the record by a bill of exceptions; and the motion for a new trial can serve no other purpose than to assign the ruling or action of the court as error."

Of course, a new trial would avail the appellant nothing in the case at bar on the only point he designates for reversal and on which an appeal was originally granted but never perfected.

The judgment is affirmed.

Byrd, J., dissents.

CONLEY BYRD, Justice.   As I read the record here
there is ample evidence to sustain the jury's finding that
appellant Bernie Edward Fields is guilty of armed rob-
bery.   The record also shows without contradiction that
he was not brought to trial before the end of the second
term of the court after the filing of the information
against him.

Since I concede that the evidence is sufficient to
sustain the jury's finding that appellant is guilty of
armed robbery, the question arises as to why I should
say he ought to be discharged.   My answer is that the
law says:

> "If any person indicted for any offense, and
> committed to prison, shall not be brought to trial
> before the end of the second term of the court hav-
> ing jurisdiction of the offense, which shall be held
> after the finding of such indictment, he shall be dis-
> charged so far as relates to the offense for which he
> was committed, unless the delay shall happen on the
> application of the prisoner."   [Ark. Stat. Ann. §
> 43-1708 (Repl. 1964)].

I find it abominable to me to say that this man must go
to prison under such circumstances that he can legiti-
mately and truthfully say, "There ain't no justice ac-
cording to law in the Courts of this State".   The mat-
ter is further compounded when we crutch our decision
on the basis that no appeal was perfected within the time
allowed and the alleged error was not properly brought
forth in the motion for new trial, because with the ord-
inary defendant for whom counsel is appointed, such
failures only occur because of negligence or failure of
counsel or because of incompetency of counsel.   *Anders*
v. *California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d
493 (1967); *Entsminger* v. *Iowa,* 386 U.S. 748, S. Ct. 1402,
18 L. Ed. 2d 501 (1967).   Further, I think that the mo-
tion for new trial here which asserted that the conviction
was contrary to the evidence and contrary to the law is
sufficient to raise the issue.

The statute here involved comes to us from the Revised Statutes of 1838 (Ch. 45, § 169) and is an obvious implementation of Article 2, § 10 of the Constitution of Arkansas which provides:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by impartial jury of the county in which the crime shall have been committed;..."

Therefore I would discharge the prisoner in accordance with the statute.